# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

|  |  |
|---|---|
| United States of America, <u>ex rel</u> Ricia Johnson and Health Dimensions Rehabilitation, Inc.,<br><br>        Plaintiffs,<br><br>vs.<br><br>Golden Gate National Senior Care, L.L.C., GGNSC Holdings, L.L.C. and GGNSC Wayzata, L.L.C., all doing business as Golden LivingCenter – Hillcrest of Wayzata, and Aegis Therapies, Inc.<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

08 SC 1194 DWF/AJB

## COMPLAINT

**FILED *IN CAMERA* AND UNDER SEAL**

## Demand for Trial By Jury

Dated:  May 1, 2008

**LINDQUIST & VENNUM P.L.L.P.**

By    s/Jonathan M. Bye
        Jonathan M. Bye, #148830
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone:  (612) 371-3211
Facsimile:  (612) 371-3207
jbye@lindquist.com

**Counsel for Plaintiffs/Relators**



FILED    MAY  1 2008
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED
DEPUTY CLERK'S INTIALS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

|  |  |  |
|---|---|---|
| United States of America, <u>ex rel</u> Ricia Johnson and Health Dimensions Rehabilitation, Inc., | ) ) ) ) ) | **COMPLAINT** |
| Plaintiffs, | ) ) | **FILED *IN CAMERA* AND UNDER SEAL** |
| vs. | ) ) | **Demand for Trial By Jury** |
| Golden Gate National Senior Care, L.L.C., GGNSC Holdings, L.L.C. and GGNSC Wayzata, L.L.C., all doing business as Golden LivingCenter – Hillcrest of Wayzata, and Aegis Therapies, Inc. | ) ) ) ) ) ) |  |
| Defendants. | ) |  |

Plaintiffs/Relators, for their Complaint against Defendants, allege as follows:

## INTRODUCTION

1.      **Pursuant to 31 U.S.C. § 3730(b)(2) of what is commonly known as the False Claims Act, this Complaint is to be filed *in camera*, is to remain under seal for at least 60 days and is not to be served on Defendants until the Court so orders.**

2.      As required by 31 U.S.C. § 3730(b)(2), immediately upon filing of this Complaint, Plaintiffs/Relators will serve the United States of America ("United States") with a copy of this Complaint and a written disclosure. The United States may elect to intervene and proceed with this action within 60 days after it receives the Complaint and written disclosure.

## JURISDICTION AND VENUE

3.     On behalf of the United States, Plaintiffs/Relators bring this action to recover treble damages and civil penalties pursuant to Title 31 U.S.C. § 3729 et seq, commonly known as the False Claims Act.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

4.     Venue is appropriate in this Court pursuant to 31 U.S.C. § 3732(a) because Defendants can be found in and transact business in the District of Minnesota.

## SUMMARY OF ACTION

5.     Defendants are one of the largest operators of nursing homes in the country and its affiliate, the largest contract therapy company in the country.  Defendants have made or caused to be made false claims for payment to Medicare and Medicaid in connection with physical therapy and occupational therapy services allegedly provided to nursing home residents while they used an exercise room.  The claims were false because the claimed therapy was never performed.  Specifically, among other things, the claimed physical therapy services were not physical therapy because they were not performed by a licensed physical therapist (or by physical therapist assistants or physical therapy aides under the appropriate required supervision of physical therapists), and additionally, they were not covered skilled physical therapy services.  Similarly, the claimed occupational therapy services were not occupational therapy because routine exercise programs are not occupational therapy and additionally, the services were not supervised by a registered occupational therapist as required by law.

2

## STATUTORY FRAMEWORK

6.     The Medicare program is a federal program of health insurance for those persons age 65 or older and the disabled established by Title XVIII of the Social Security Act, Pub. L. No. 89-97, 79 Stat. 291, as amended, 42 U.S.C. §§ 1395 et seq.  The Medicare program consists of two parts: Part A and Part B.  Part A is funded by Social Security taxes and provides major medical insurance coverage for the costs of hospital care, related post-hospital services, home health services and hospice care.  See 42 U.S.C. §§ 1395c - 1395x.  More specifically, among other things, Part A provides for hospital insurance benefits that cover certain services furnished to inpatients of skilled nursing facilities.  Id.  Part B is a federally-subsidized, voluntary health insurance program.  It provides supplemental insurance coverage for certain medical and other services excluded from Part A.   See 42 U.S.C. §§ 1395j - 1395w.   Depending on the circumstances, physical therapy and occupational therapy may be covered under Part A or Part B.  In connection with claims for payment under Medicare, each provider certifies that the services provided were provided in compliance with the laws and regulations regarding the provision of health care services, including state statutes regulating the provision of physical therapy and speech-language pathology services.

7.     The Medicaid program is a cooperative federal/state program through which the United States grants funds to participating states to provide health care services to needy individuals.  See 42 U.S.C. § 1396.  To qualify for federal funds, a state must submit a plan to the United States that complies with the requirements of 42 U.S.C. 1396a(a).  Pursuant to 31 U.S.C. § 3729(c), a claim for payment under a Medicaid plan

3

constitutes a claim within the meaning of the False Claims Act. In connection with claims for payment under Medicaid, each provider generally acknowledges that payment of the claims will be from federal and state funds and that any false claims, statements, or documents, or concealment of a material fact, may be prosecuted under applicable federal or state laws.

8.     The False Claims Act ("FCA") provides, in pertinent part, that:

(a) Any person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; (3) conspires to defraud the Government by getting a false or fraudulent claim paid or approved by the Government; . . . or (7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,

* * *

is liable to the United States Government for a civil penalty of not less than $[5,500] and not more than $[11,000], plus 3 times the amount of damages which the Government sustains because of the act of that person . . .

(b) For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

See 31 U.S.C. § 3729 with the penalty amounts in brackets reflecting the increases for inflation set forth in 28 C.F.R. §85.3(a)(9).

## DEFENDANTS

9.     Defendant Golden Gate National Senior Care, L.L.C. is a limited liability company headquartered in Little Rock, Arkansas. It operates approximately 333 skilled

4

nursing centers (doing business as "Golden LivingCenters") and 17 assisted living centers in Minnesota and approximately 21 other states. Golden Gate National Senior Care, L.L.C. and its affiliates GGNSC Holdings, L.L.C. and GGNSC Wayzata, L.L.C. (hereinafter collectively "Golden Living") are part of the self-described "Golden Living family of companies" that are ultimately owned by Fillmore Strategic Investors, L.L.C., a self-described private real estate equity firm. One of the skilled nursing facilities that Golden Living operates is located at 15409 Wayzata Boulevard in Wayzata, Minnesota that does business under the name "Golden LivingCenter – Hillcrest of Wayzata" ("Hillcrest"). Golden Living also operates eight other Golden LivingCenters in Minnesota – Bloomington, Minneapolis, Delano, Excelsior, Franklin, Hibbing, Stillwater and Henning.

10.    Defendant Aegis Therapies, Inc. ("Aegis") is another of the self-described "Golden Living family of companies" ultimately owned by Fillmore Strategic Investors, L.L.C. Aegis is the largest contract therapy company in the United States, providing rehabilitative services at more than 1,000 nursing home facilities in 37 states and the District of Columbia, including at Hillcrest.

## PLAINTIFFS/RELATORS

11.    Plaintiff/Relator Ricia Johnson ("Johnson") is a Minnesota resident and Minnesota-licensed occupational therapy assistant. She is not and has never been an occupational therapist, physical therapist, physical therapist assistant or physical therapist aid. From October 2004 through March 2007 she was employed by Aegis as an occupational therapy assistant and was assigned to work at Hillcrest.

5

Doc# 2578843\2

12.     Plaintiff/Relator Health Dimensions Rehabilitation, Inc. ("HDR") is a Minnesota corporation with its offices in Cambridge, Minnesota, that provides therapy services to skilled nursing facilities.   After leaving Aegis, Johnson began working at HDR where she described the conduct of Defendants which is the subject of this action and which she had witnessed as an employee of Aegis.   HDR recognized that Defendants' conduct that Johnson was describing resulted in false claims being submitted to Medicare and Medicaid and after conducting further investigation, Johnson and HDR determined to report Defendants' actions to the appropriate governmental authorities and to then commence this action.

## THE FALSE CLAIMS

13.     Defendants placed Nautilus-type exercise equipment in a room at Hillcrest physically removed from the area regularly used for physical therapy and occupational therapy and called it a "Wellness Center."  The room and equipment was then used (a) by non-Hillcrest residents who paid a fee to Hillcrest for access to the equipment for general exercise purposes (i.e. non-therapy purposes), (b) by Hillcrest residents for such non-therapy purposes and (c) by Hillcrest residents for purposes which were billed to Medicare and Medicaid as therapy services.

14.     From December 2005 through March 2007, Johnson was assigned by Aegis to work in the Wellness Center at Hillcrest.   Virtually every day she worked in the Wellness Center, Johnson would be given by her superiors at Aegis purported physical therapy and occupational therapy patient orders.  The "orders" consisted of the patient's diagnosis and a circle around the name of an exercise machine.   Johnson was then

6

directed to monitor the patients' use of the identified machine. Johnson was not provided with any further instruction or clinical direction.

15.     Johnson would then monitor the patients as they used the machines, and she kept track of the amount of time each patient used a machine on a log. Except on a very sporadic basis, there were no physical therapists or occupational therapists in the Wellness Center with Johnson and her work was not reviewed or supervised by a physical therapist or occupational therapist, except as part of occasional general job performance reviews. At the end of each day, Johnson, as directed by her Aegis supervisors, would submit her time log to the Aegis therapy department.

16.     When Johnson monitored patients who had orders for physical therapy but not for occupational therapy, she would submit her time log for those patients to the Aegis physical therapy department, which would bill her services to Golden Living as if the services had been performed by one of Aegis's physical therapists and Golden Living, in turn, would then submit claims to, for most patients, Medicare or Medicaid, coding Johnson's time as being for physical therapy services. In some instances, Johnson witnessed Aegis's physical therapists negotiating over who would get to claim Johnson's time as their own that day in order to meet Aegis-established individual productivity goals.

17.     When Johnson monitored patients who had orders for occupational therapy services, as directed by her Aegis supervisors, she entered her time into Aegis's occupational therapy department's billing program as if it was for occupational therapy services, when it was, in fact, only unsupervised monitoring of routine and unskilled

7

exercises. Aegis billed Golden Living for these services as if they were occupational therapy services and Golden Living, in turn, would then submit claims to, for most patients, Medicare or Medicaid, coding Johnson's time as being for occupational therapy services.

18.    These claims were false for at least three reasons. First, no services performed by Johnson could lawfully be considered as physical therapy services because she was not a licensed physical therapist, physical therapy assistant or physical therapy aid (and even if she had been one of the latter two, she was not supervised by a physical therapist in the manner which would have allowed her time to be billed as physical therapy). Second, no services performed by Johnson could lawfully be considered occupational therapy services because none of the services were supervised by a registered occupational therapist as required by law. Third, the services themselves were not skilled therapy services which could lawfully be billed as such, even if they had been performed by a properly licensed or supervised individual. For example, the services were not of a level of complexity and sophistication, or the condition of the patient was not of a nature, that required the judgment, knowledge and skills of a qualified physical therapist or qualified occupational therapist. Instead they were non-skilled services not lawfully billable as physical or occupational therapy.

19.    Specific examples of such false claims include the following:

| Date billed | Patient initials | Time billed |
| --- | --- | --- |
| 8-7-06 | MS | 30 minutes |
| 8-7-06 | CK | 30 minutes |
| 8-18-06 | KM | 20 minutes |

8

| | | |
|---|---|---|
| 8-18-06 | TA | 30 minutes |
| 8-28-06 | AM | 30 minutes |
| 8-28-06 | GM | 30 minutes |
| 9-26-06 | DW | 30 minutes |
| 10-9-06 | DW | 30 minutes |
| 10-11-06 | JD | 30 minutes |
| 10-16-06 | EH | 30 minutes |
| 10-16-06 | DW | 30 minutes |
| 10-16-06 | MC | 30 minutes |
| 10-16-06 | JD | 30 minutes |
| 10-18-06 | DW | 20 minutes |
| 10-18-06 | EH | 30 minutes |
| 10-18-06 | RD | 30 minutes |
| 10-20-06 | DW | 30 minutes |
| 10-20-06 | EH | 30 minutes |
| 10-23-06 | DW | 20 minutes |
| 10-25-06 | EH | 30 minutes |
| 10-25-06 | DW | 30 minutes |
| 10-25-06 | RD | 30 minutes |
| 10-30-06 | EH | 30 minutes |
| 11-1-06 | EH | 30 minutes |
| 11-1-06 | RD | 30 minutes |
| 11-3-06 | EH | 30 minutes |
| 11-6-06 | EH | 30 minutes |
| 11-8-06 | EH | 30 minutes |
| 11-8-06 | RD | 30 minutes |
| 11-13-06 | EH | 30 minutes |
| 11-13-06 | MT | 30 minutes |
| 11-15-06 | RD | 30 minutes |
| 11-15-06 | EH | 30 minutes |
| 11-20-06 | EH | 30 minutes |
| 11-20-06 | WR | 30 minutes |
| 11-20-06 | MT | 30 minutes |
| 11-22-06 | WR | 25 minutes |
| 11-24-06 | WR | 25 minutes |
| 11-27-06 | EH | 30 minutes |
| 11-27-06 | WR | 25 minutes |
| 12-15-06 | GM | 30 minutes |

20.     Moreover, Aegis often directed Johnson to monitor four patients each on a

different machine at one time and she would sometimes "treat" 30 patients a day in this

manner. Medicare and Medicaid were billed for the "treatments" as if they were therapy. These claims were false, in addition to the reasons set forth above, because group therapy by definition does not meet the requirements for skilled therapy unless it is a skilled service that is clinically appropriate and then only if it constitutes less than 25% of the therapy received by the patient. Virtually 100% of the claimed therapy provided in the Wellness Center was in a group setting.

21.    In addition to Johnson, Aegis similarly employed other persons to work in the Wellness Center at Hillcrest, including Todd Hodgkins, CaRae Caymen and Robin (last name unknown) who also were not physical therapists or occupational therapists and who also were not supervised in a manner which would qualify their services to be claimed as physical therapy services or occupational services and yet whose services were falsely claimed as physical therapy services or occupational services.

22.    In addition, because the Medicare and Medicaid payment formats make it lucrative for Defendants to provide as much therapy as possible to their residents and to keep the residents receiving therapy in their facilities as long as possible, Defendants repeatedly encouraged overutilization. In other words, they encouraged therapists to arrange orders for more "therapy" than was medically necessary for a longer course of time than was medically necessary. In some cases, the amount of "therapy" ordered was so intensive that it was not only unnecessary, but it was physically harmful to the patients. Patients also suffered emotional harm because therapists who desired to discharge patients from therapy so that the patient could return home were told by their Aegis supervisors not to so that claims could continue to be submitted to Medicare and

10

Medicaid. To the extent claims were submitted for therapy that was not medically necessary, those claims were also false.

23.    On information and belief, Defendants' submission of false physical and occupational therapy claims in connection with the Wellness Center at Hillcrest was part of a similar pattern and practice of false claims in connection with Defendants' eight other skilled nursing facilities in Minnesota, as well as at Defendants' approximately 324 other skilled nursing facilities across the country which pattern and practice started before Johnson began working at Hillcrest and which continues to this day.

24.    Just at Hillcrest and just during the time that Johnson worked in the Wellness Center at Hillcrest, Defendants presented or caused to be presented in excess of 9000 such false claims for payment by Medicare or Medicaid.

## COUNT I

### False Claims
### (31 U.S.C. § 3729 (a) (1))

25.    Plaintiffs/Relators repeat and reallege each of the preceding allegations, as if fully set forth herein.

26.    Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval to the United States.

27.    By virtue of the false or fraudulent claims made by the Defendants, the United States suffered damages and therefore is entitled to treble damages in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation.

11

## COUNT II

### False Claim Act: Making or Using False Record or Statement
### (31 U.S.C. § 3729 (a) (2))

28.     Plaintiffs/Relators repeat and reallege each of the preceding allegations, as if fully set forth herein.

29.     Defendants knowingly made, used or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the United States.

30.     By virtue of the false or fraudulent claims made by the Defendants, the United States suffered damages and therefore is entitled to treble damages, plus a civil penalty of $5,500 to $11,000 for each violation.

## COUNT III

### False Claims Act: Conspiring to Defraud the Government
### (31 U.S.C. § 3729 (a) (3))

31.     Plaintiffs/Relators repeat and reallege each of the preceding allegations, as if fully set forth herein.

32.     Defendants conspired with one another to defraud the government by getting false or fraudulent claims allowed or paid.

33.     By virtue of the false or fraudulent claims made by the Defendants, the United States suffered damages and therefore is entitled to treble damages, plus a civil penalty of $5,500 to $11,000 for each violation.

Doc# 2578843\2

## COUNT IV

### False Claims Act:  Reverse False Claims
### (31 U.S.C. § 3729 (a) (7))

34.     Plaintiffs/Relators repeat and reallege each of the preceding allegations, as if fully set forth herein.

35.     Defendants knowingly made, used or caused to be made or used a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the United States.

36.     By virtue of the false or fraudulent claims made by the Defendants, the United States suffered damages and therefore is entitled to treble damages in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation.

## PRAYER

**WHEREFORE**, Plaintiffs/Relators respectfully request judgment against Defendants as follows:

1.     That by reason of the violations of the False Claims Act as set out in Counts I through IV, this Court enter judgment against Defendants jointly and severally in an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus a civil penalty of not less than $5,500.00 and not more than $11,000.00 for each violation of 31 U.S.C. § 3729;

2.     That Relators, as Qui Tam Plaintiffs, be awarded the maximum amount allowed pursuant to § 3730(d) of the False Claims Act and/or any other applicable provision of law;

13

3.  That Relators be awarded all costs of this action, including attorneys' fees and Court costs; and

4.  That the Court grants such other relief as it deems just and proper.

Dated: May __, 2008

**LINDQUIST & VENNUM P.L.L.P.**

By_____
    Jonathan M. Bye/#148830
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 371-3211
Facsimile: (612) 371-3207
jbye@lindquist.com

**Counsel for Plaintiffs/Relators**

14

Doc# 2578843\2