# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br>*ex rel.* Ricia Johnson and Health<br>Dimensions Rehabilitation, Inc.,<br><br>                    Plaintiff,<br><br>v.<br><br>Golden Gate National Senior Care, LLC,<br>GGNSC Holdings, LLC, and GGNSC<br>Wayzata, LLC, all d/b/a Golden<br>LivingCenter – Hillcrest of Wayzata,<br>and Aegis Therapies, Inc.,<br><br>                    Defendants. | Civil No. 08-1194 (DWF/JJK)<br><br><br><br><br>**MEMORANDUM**<br>**OPINION AND ORDER** |

_____

Chad A. Blumenfield and D. Gerald Wilhelm, Assistant United States Attorneys, counsel for Plaintiff United States of America.

Jonathan M. Bye, Esq., Lindquist & Vennum PLLP, counsel for Relators Ricia Johnson and Health Dimensions Rehabilitation, Inc.

Kathleen D. McMahon, Esq., Thomas B. Heffelfinger, Esq., and Elizabeth C. Borer, Esq., Best & Flanagan LLP, counsel for Defendants.

_____

## INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss (Doc. No. 39).

For the reasons set forth below, the Court denies the motion.

## BACKGROUND

Relators Ricia Johnson ("Johnson") and Health Dimensions Rehabilitation, Inc. ("HDR") (together, "Relators") initiated this qui tam action on behalf of the government in May of 2008.  (Doc. No. 1, Compl.)  The government declined to intervene on June 27, 2011.  (Doc. No. 31.)

Johnson was employed by Aegis Therapies, Inc. ("Aegis") as an occupational therapy assistant from October 2004 through March 2007 and was assigned to work at the Golden LivingCenter – Hillcrest of Wayzata ("Hillcrest") skilled nursing facility. (Compl. ¶¶ 9, 11.)  Relators allege that a fitness room at Hillcrest, called the "Wellness Center," was used by Hillcrest residents for non-therapy purposes, which were then billed to Medicare and Medicaid as therapy services.  (Compl. ¶ 13.)  Johnson was assigned by Aegis to work in the Wellness Center at Hillcrest from December 2005 through March 2007.  (Compl. ¶ 14.)  Relators allege that Johnson was directed by her supervisors to monitor patients' use of identified exercise machines, without any instruction or clinical direction.  (Compl. ¶ 14.)  Johnson would keep a log of the amount of time each patient used a machine.  (Compl. ¶ 15.)  Relators claim that, "[e]xcept on a very sporadic basis, there were no physical therapists or occupational therapists in the Wellness Center with Johnson and her work was not reviewed or supervised by a physical therapist or occupational therapist, except as part of occasional general job performance reviews." (Compl. ¶ 15.)  Relators also allege the following:

> 16. When Johnson monitored patients who had orders for physical therapy but not for occupational therapy, she would submit her time log for those patients to the Aegis physical therapy department, which would bill

2

>her services to Golden Living as if the services had been performed by one of Aegis's physical therapists and Golden Living, in turn, would then submit claims to, for most patients, Medicare or Medicaid, coding Johnson's time as being for physical therapy services. In some instances, Johnson witnessed Aegis's physical therapists negotiating over who would get to claim Johnson's time as their own that day in order to meet Aegis-established individual productivity goals.
>
>17. When Johnson monitored patients who had orders for occupational therapy services, as directed by her Aegis supervisors, she entered her time into Aegis's occupational therapy department's billing program as if it was for occupational therapy services, when it was, in fact, only unsupervised monitoring of routine and unskilled exercises. Aegis billed Golden Living for these services as if they were occupational therapy services and Golden Living, in turn, would then submit claims to, for most patients, Medicare or Medicaid, coding Johnson's time as being for occupational therapy services.

(Compl. ¶¶ 16-17.)  Relators claim that the foregoing claims were false because: (1) Johnson was not a licensed physical therapist, physical therapy assistant or physical therapy aid; (2) none of the purported occupational therapy services were supervised by a registered occupational therapist as required by law; and (3) "the services themselves were not skilled therapy services which could lawfully be billed as such, even if they had been performed by a properly licensed or supervised individual." (Compl. ¶ 18.) Relators identify 41 examples of false claims submitted by Defendants and list the initials of the individuals for whom the services were performed as well as the date of billing and the amount of time billed.  (Compl. ¶ 19.)

Relators further allege that Aegis often directed Johnson to monitor four patients at a time on different machines and that she "would sometimes 'treat' 30 patients a day in this manner." (Compl. ¶ 20.)  Relators claim that Medicare and Medicaid were billed for these sessions "as if they were therapy."  (Compl. ¶ 20.)  Relators assert that, contrary to

3

law, "[v]irtually 100% of the claimed therapy provided in the Wellness Center" occurred "in a group setting." (Compl. ¶ 20.) In addition to Johnson, Relators identify three other individuals employed by Aegis to work in the Wellness Center, who were neither physical therapists nor occupational therapists and who were similarly unsupervised, and yet whose services were falsely claimed as physical or occupational therapy. (Compl. ¶ 21.) Relators claim that Defendants thus presented in excess of 9,000 such false claims for payment by Medicare or Medicaid. (Compl. ¶ 24.)

After leaving Aegis, Johnson began working at HDR, to whom she described the conduct she witnessed as an employee of Aegis. (Compl. ¶ 12.) Johnson and HDR then reported Defendants' conduct to the government and commenced this action. (Compl. ¶ 12.)

Relators assert the following four claims against Defendants under the False Claims Act ("FCA"), 31 U.S.C. § 3729(a): (1) False Claims; (2) Making or Using False Record or Statement; (3) Conspiring to Defraud the Government; and (4) Reverse False Claims.

## DISCUSSION

### I. Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir.

4

1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II.    Motion to Dismiss

Relators' claims stem from the principal allegation that Defendants unlawfully billed Medicare and Medicaid for occupational and physical therapy services for the time Johnson and others watched Medicare and Medicaid recipients exercise, unsupervised, in the Wellness Center. Relators claim that these practices violated Minn. Stat. §§ 148.706 and 148.6432, and 42 U.S.C. § 1395i-3(d)(4). Defendants seek dismissal of Relators' complaint on two grounds: (1) that Relators are prohibited from asserting their claims on

the basis of the public disclosure bar; and (2) that Relators have failed to allege fraud with sufficient particularity.

### A. Public Disclosure Bar

Defendants first argue that the public disclosure bar prohibits Relators from pursuing their FCA claims on behalf of the government. Defendants claim that several documents identified by Defendants publicly disclosed the fraud at issue and thus divest the Court of jurisdiction over this matter.

31 U.S.C. § 3730(e)(4), as it existed at the time of the filing of Relators' complaint in 2008, provided:

> (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4) (2006) (amended 2010).[1] For purposes of the present motion, the Court considers the statute as it existed in 2008. *See, e.g.*, *United States ex rel. Estate of*

---

[1] 31 U.S.C. § 3730(e)(4), as amended in 2010, now provides:

> (A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed--

(Footnote Continued on Next Page)

6

*Cunningham v. Millennium Labs. of Cal.*, 2012 WL 259572 at *3 (D. Mass. Jan. 30, 2012), citing *Mullan v. Torrance*, 22 U.S. 537, 539 (1824) ("It is quite clear, that the jurisdiction of the Courts depends upon the state of things at the time of the action brought . . . .").

A court must consider three questions when determining whether a particular qui tam action under the FCA is barred as a result of public disclosures: "(1) Have allegations made by the relator been 'publicly disclosed' before the qui tam suit was brought? (2) If so, is the qui tam suit 'based upon' the public disclosure? and (3) If so, was the relator an 'original source' of the information on which the allegations were based?" *Minnesota Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d

---

(Footnote Continued From Previous Page)

> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
> (iii) from the news media,
> unless . . . the person bringing the action is an original source of the information.
>
> (B) For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) [sic] who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

Patient Protection and Affordable Care Act, Pub. L. No. 111–148, § 10104(j)(2), 124 Stat. 119, 901 (2010) (codified as amended at 31 U.S.C. § 3730(e)(4) (Supp. 2010) (effective July 22, 2010)).

1032, 1042 (8th Cir. 2002).  If the Court answers either of the first two questions in the negative, or the third question in the affirmative, the Court has jurisdiction over the action.  *Id.*

Defendants specifically assert that the allegations made by the Relators in this case were "publicly disclosed" before the qui tam suit was filed, and that Relators' claims are consequently barred.  Defendants identify a series of public documents and cases, which, they allege, brought to light Relators' claims before the filing of the instant lawsuit.  None of the public disclosures relied upon by Defendants, however, identify a fraud committed by Defendants or the specific acts and practices raised by the complaint.  (*See* Doc. No. 41 at 8-11; Doc. No. 42, Heffelfinger Aff. ¶¶ 4-12, Exs. C-K.)

Even assuming, without deciding, that Relators' allegations are in some way based upon the public disclosures identified by Defendants, it is clear to the Court that Johnson is an original source of the information on which the allegations in this case are based.  Johnson worked in the Wellness Center at Hillcrest, monitored patients on exercise equipment unsupervised, and entered her time into Aegis's billing program as occupational and physical therapy.  (Compl. ¶¶ 16-17.)  Johnson thus has direct and independent knowledge of the information on which the allegations here are based.  Johnson also reported the alleged fraudulent conduct to the government prior to commencing this action.  (Compl. ¶ 12.)  Consequently, the Court concludes that the public disclosure bar does not prohibit this suit from proceeding, and this Court is not divested of jurisdiction pursuant to 31 U.S.C. § 3730(e)(4)(A).

**B.     Particularity Requirement of Rule 9(b)**

In the alternative, Defendants assert that Relators' claims of fraud fail to meet the requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The rule requires a plaintiff to plead "such matters as the time, place and contents of false representations, as well as the identity of the person making the representation and what was obtained or given up thereby." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (internal quotation omitted). Otherwise stated, the party must identify the "who, what, where, when and how" of the alleged fraud; conclusory allegations of fraudulent conduct will not suffice. *Id.*

Applying these standards, the Court finds that Relators' complaint pleads fraud with sufficient particularity to satisfy the requirements of Rule 9(b) and survive the present motion to dismiss. Here, Relators allege the time, place and manner of the fraud and identify 41 specific incidents of false billing. (Compl. ¶ 19.) They also include the initials of the individuals for whom the services were performed as well as the date of billing and the amount of time billed. (Compl. ¶ 19.) Relators further describe Johnson's duties, her lack of supervision, and the instructions given to her by Aegis, as well as Defendants' billing practices. (Compl. ¶¶ 16-20.)

Because the Court finds that Relators' complaint satisfies Rule 9(b), and concludes that Relators' claims are not barred, Defendants' motion to dismiss must be denied.

**ORDER**

Based upon the foregoing, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. No. [39]) is **DENIED**.


Dated: February 13, 2012              s/Donovan W. Frank
                                      DONOVAN W. FRANK
                                      United States District Judge