# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, ex rel Ricia Johnson and Health Dimensions Rehabilitation, Inc., | Civ. No. 08-1194 (DWF/JJK) |
| Plaintiff/Relators, | |
| v. | |
| Golden Gate National Senior Care, L.L.C., GGNSC Holdings, L.L.C., and GGNSC Wayzata, L.L.C., all doing business as Golden Living Center – Hillcrest of Wayzata; and Aegis Therapies, Inc.; | **ORDER** |
| Defendants. | |

This matter is before the Court on Relators' Motion to Enforce the Court's Discovery Order and for Sanctions Pursuant to Fed. R. Civ. P. 37(b)(2) (Doc. No. 116), and Relators' Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(b)(2) for Violation of the Court's Protective Order (Doc. No. 117). On March 5, 2013, the Court held a hearing on these motions at which the parties were represented by counsel. Based on oral argument at the hearing, the motions, and on the file and all the proceedings therein, **IT IS HEREBY ORDERED** that:

1. Relators' Motion to Enforce the Court's Discovery Order and for Sanctions Pursuant to Fed. R. Civ. P. 37(b)(2) (Doc. No. 116), is **DENIED**;

2. Relators' Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(b)(2) for Violation of the Court's Protective Order (Doc. No. 117), is **GRANTED IN PART** as follows;

    a. On or before **April 1, 2013**, Defendants shall pay to the Court the sum of $5,000 as a monetary sanction for Defendants' violations of the Court's May 4, 2012 Protective Order;

    b. On or before **March 27, 2013**, counsel for Relators shall provide the Court with an affidavit or declaration setting forth the reasonable expenses, including attorney's fees, incurred in bringing their Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(b)(2) for Violation of the Court's Protective Order (Doc. No. 117). Upon receipt of that application for expenses, and after considering whether the expenses and fees are reasonable under the circumstances, the Court will issue a separate Order requiring Defendants to reimburse Relators for the costs and reasonable attorney's fees incurred in bringing this motion; and

3. The attached Memorandum is incorporated in this Order.

Date: March 20, 2013

                                               *s/ Jeffrey J. Keyes*
                                               JEFFREY J. KEYES
                                               United States Magistrate Judge

**MEMORANDUM**

In this *qui tam* action under the False Claims Act, Relators Health Dimensions Rehabilitation, Inc. ("HDR"), and Ricia Johnson ("Johnson"), allege that Defendants Golden Gate National Senior Care, L.L.C., GGNSC Holdings, L.L.C., and GGNSC Wayzata, L.L.C. (collectively "Golden Living"), and Aegis Therapies, Inc. ("Aegis"), submitted fraudulent claims for Medicare and Medicaid reimbursement to the United States government. Currently pending before the Court are Relators' Motion to Enforce the Court's Discovery Order and for Sanctions Pursuant to Fed. R. Civ. P. 37(b)(2) (Doc. No. 116), and Relators' Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(b)(2) for Violation of the Court's Protective Order (Doc. No. 117). The first motion concerns whether the Court's prior discovery Order (Doc. No. 106), requires Defendants to produce certain employee personnel files and whether Defendants' failure to do so justifies sanctions under Federal Rule of Civil Procedure 37(b). The latter concerns Defendants' conceded violation of the Court's May 4, 2012 Protective Order (Doc. No. 78), which involved Defendants' unauthorized disclosure of information that Relators produced under a confidentiality designation and Defendants' subsequent use of that information in a separate case between these parties in a Minnesota State District Court.

**I.    DEFENDANTS' EMPLOYEE PERSONNEL FILES**

In their Motion to Enforce the Court's Discovery Order and for Sanctions Pursuant to Fed. R. Civ. P. 37(b)(2) (Doc. No. 116), Relators ask the Court to

3

require Defendants to disclose several of Defendants' employees' personnel files.  Further, Relators request that the Court issue an appropriate sanction for Defendants' failure to disclose those personnel files on grounds that the Court already required that the files be produced in an earlier discovery Order.  (*See* Doc. No. 106, Nov. 15, 2012 Order.)  Defendants contend that the Court did not specifically order production of their employees' personnel files in its November 15, 2012 Order.  Defendants assert that they have offered to (a) stipulate that all physical therapists were subject to patient-care-time efficiency goals; (b) provide a verified interrogatory response identifying the efficiency goals applicable to the relevant class of employees during the relevant time period; and (c) produce copies of any corrective-action plan or plans that any Hillcrest therapists and assistants received as a result of time-related issues. (Doc. No. 121, Defs.' Mem. in Opp'n to Relators' Motions to Enforce the Court's Discovery Orders and for Sanctions ("Defs.' Sanctions Mem.") 7.)

The Court concludes that its November 15, 2012 Order (Doc. No. 106), did not specifically require production of the personnel files at issue.  Therefore, no sanctions are warranted as a result of Defendants' refusal to produce those files. Relators' motion is denied to the extent it seeks sanctions.

In addition, as stated on the record at the March 5, 2012 hearing, and based on Defendants' representation that they will provide the information identified on page 7 of their memorandum in opposition to this motion (Doc. No. 121, Defs.' Sanctions Mem. 7), the Court denies Relators' motion to the

4

extent it seeks production of complete employee personnel files. Specifically, the Court concludes that the requests for entire personnel files for a class of employees are overbroad and not reasonably limited to obtain discoverable information. The Court offers no opinion whether information responsive to a more targeted discovery request would be non-discoverable merely because it may be found in an employee's "personnel file." No dispute concerning such a targeted request is currently before the Court.

## II. SANCTIONS FOR VIOLATION OF THE PROTECTIVE ORDER

Defendants are in a contest with Relators on two fronts. Defendants were pulled into the first front when Relators filed this *qui tam* action against them. Defendants then expanded the contest to a second front on October 10, 2012, when they filed a lawsuit in Hennepin County District Court (the "State Court Litigation"), against Relators HDR and Johnson asserting claims for defamation, tortious interference with contract, tortious interference with business expectancy, violation of Minnesota's Uniform Deceptive Trade Practices Act, conversion, aiding and abetting, and civil conspiracy. (Doc. No. 120, Decl. of Jonathan M. Bye ("Bye Decl.") ¶ 17, Ex. O, State Court Litigation Summons & Compl.) In the State Court Litigation, Defendants retained the services of attorney Charles Schoenwetter with the law firm of Bowman and Brooke LLP. (Doc. No. 122-1, Aff. of C.J. Schoenwetter ("Feb. 5 Schoenwetter Aff.") ¶ 1.) Mr. Schoenwetter is not counsel of record in this case and does not represent Defendants in this *qui tam* action; nor are counsel of record in this action involved

5

in representing Defendants in the State Court Litigation. (*Id.* ¶ 3.) Because Defendants disclosed information covered by the Court's Protective Order in this case to their attorneys in the State Court Litigation, and Defendants later used that information in the State Court Litigation, Defendants have violated the Protective Order and Relators have filed a motion for sanctions under Fed. R. Civ. P. 37(b)(2) (*see* Doc. No. 117).

In this case, the Court entered the Protective Order on May 4, 2012, which permitted any party to designate documents and other information as "CONFIDENTIAL," and limited access to that information to a specific list of individuals. (Doc. No. 78, Protective Order.) The Protective Order provides that "[a]ccess to any 'Confidential' document shall be limited to: (a) the Court and its staff; (b) Attorneys, their law firms, and their Outside Vendors; (c) persons shown on the face of the document to have authored or received it; (d) court reporters retained to transcribe testimony; (e) the parties; [and] (f) outside independent persons [such as mock jurors or focus group members.]" (Protective Order ¶ 4.) Attorneys' access to confidential information is specifically limited to "counsel of record," meaning the attorneys representing the parties in this case. (*Id.* ¶ 1.) And the Protective Order provides that "[a]ll 'Confidential' . . . documents, along with the information contained in the documents, shall be used solely for the purpose of this action," and it prohibits any "person receiving such documents" from directly or indirectly using, transferring, disclosing, or communicating "in any way the documents *or their contents* to any person other than those specified" by

6

the Protective Order. (*Id.* ¶ 3 (emphasis added).) This umbrella Protective Order tracks very closely the terms proposed in this District's Local Forms, which is widely agreed upon by litigants in this District and forms the basis for protective orders entered by the Court in many civil cases. *Compare* D. Minn. LR, Form 6 – Stipulation for Protective Order ¶¶ 1–4, *with* Doc. No. 78, Protective Order ¶¶ 1-4.

As in almost every action in which a protective order is entered, Relators produced some documents that they marked "CONFIDENTIAL" during discovery in this action and some documents without any confidentiality designation. For example, Relators produced several Bates labeled documents to Defendants that Defendants claim Johnson stole when she left their employment, and Relators did not designate those documents confidential when producing them in discovery. (*See* Bye Decl. ¶ 22, Ex. S, Letter from Jonathan D. Wilson to Magistrate Judge Jeffrey J. Keyes (Feb. 11, 2013), filed under seal.) Relying on the Protective Order, Relators also produced several documents comprising Johnson's personnel file from her current employment with HDR and designated these documents as confidential by marking them in the lower right hand corner of each page with the word "CONFIDENTIAL" in all capital letters next to the Bates number. (Bye Decl. ¶ 13, Ex. K, Letter from Jonathan M. Bye to Thomas B. Heffelfinger and Jonathan D. Wilson (Oct 10, 2012) ("Defs.' Feb. 11, 2013 Letter"); *id.* ¶¶ 14–16, Exs. L–N; Doc. No. 119, Mem. in Supp. of Relators' Mots. for Sanctions ("Relators' Sanctions Mem.") 11.) Because Relators designated

these documents confidential and Defendants never requested a change in the confidentiality designation, Defendants were prohibited from disclosing these documents or the information in them to any person not authorized to receive them or using the documents and their contents for any purpose other than this litigation.  (*See* Doc. No. 78, Protective Order ¶ 11 (establishing procedures for challenging a confidentiality designation); *id.* ¶ 3 (limiting permissible uses of documents and information designated as confidential).)

Although Defendants were subject to these prohibitions on disclosing and using Johnson's HDR personnel file, Defendants disclosed the documents to Mr. Schoenwetter, their counsel in the State Court Litigation, and then used the information in those documents in the State Court Litigation.  The disclosure occurred first.  In an affidavit describing how that disclosure happened, David Beck, the Chief Legal Officer for Defendants, states that "as part of prosecuting the State Court Litigation, [he] sent C.J. Schoenwetter [several documents that Relators produced in this litigation] without confidentiality designations."[1]  (Doc. No. 122, Attach. 1 at 11–13, Aff. of David Beck ("Beck Aff.") ¶ 3.)  Mr. Beck adds that "[u]nfortunately, due to an *inadvertent oversight*, various 'confidential' documents were also included in the materials sent to Mr. Schoenwetter," but he

---

[1]  Presumably, these documents had been Bates labeled by Relators as well, and bore the same Bates stamp as Johnson's HDR personnel file, absent the confidentiality designation that the latter bore in the lower right hand corner of each page next to the Bates number.

does not describe how the accident occurred.  (*Id.* (emphasis added).)  By sending these documents to Mr. Schoenwetter, inadvertently or not, Defendants thereby violated the Protective Order.[2]

Defendants then used information from Johnson's HDR personnel file in the State Court Litigation as described below.  In the State Court Litigation, Relators responded to Defendants' complaint by filing a motion to dismiss under Minnesota's "Anti-SLAPP" statute (Relators' Sanctions Mem. 11–12), which allows a defendant in a civil action to seek dismissal of claims that attempt to punish the state-court defendant from engaging in public participation or speech intended to procure a favorable government action.  *See* Minn. Stat. § 554.02.  Because filing such a motion results in an automatic stay of discovery under Minn. Stat. § 554.02, subd. 2(1), on December 24, 2012, Defendants filed a motion and memorandum of law seeking to lift the Anti-SLAPP law's stay on discovery.  (Bye Decl. ¶ 18, Ex. P, Aegis and Golden Living's Mem. of Law in Supp. of their Mot. to Lift the Anti-SLAPP Statute's Stay on Discovery ("Defs.' State Court Anti-SLAPP Mem."), *passim*.)  In that memorandum, and in a supporting affidavit, Defendant's counsel, Mr. Schoenwetter, referenced the confidential documents from Johnson's HDR personnel file, and quoted directly

---

[2]  Defendants concede that the disclosure to Mr. Schoenwetter of Johnson's HDR personnel file was a violation of the Protective Order.

9

from them.  (*Id.* at 5; Bye Decl. ¶ 19, Ex. Q, Dec. 24, 2012 Aff. of Charles J. Schoenwetter ("Dec. 24 Schoenwetter Aff.") ¶¶ 9.A.–9.C.)

Defendants now contend that the Court should not impose any sanction on Defendants in this matter because Defendants' disclosure of confidential information to Mr. Schoenwetter and Defendants' subsequent use of that information in the State Court Litigation were inadvertent or accidental.  (*See* Doc. No. 121, Defs.' Sanctions Mem. 2–4; *see also* Bye Decl. ¶ 13, Ex. K, Defs.' Feb. 11, 2013 Letter (arguing that the attorneys at Bowman and Brooke representing Defendants in the State Court Litigation "were unfamiliar with the terms of the Protective Order in this action").)  To support this position, Defendants rely primarily on the affidavits of Defendants' in-house counsel, Mr. Beck, and the February 5, 2013 Affidavit of Mr. Schoenwetter.  But, rather than showing that the violation of this Court's Protective Order was inadvertent, these affidavits appear, at best, to be an attempt by Defendants to obscure what actually occurred, and at worst, an effort to mislead the Court.

First, Defendants argue that the Court should not sanction them for the violation of the Protective Order because Mr. Beck only "inadvertently" disclosed Johnson's HDR personnel file to Defendants' attorneys in the State Court Litigation.  As noted above, Mr. Beck has sworn in his affidavit that the confidential documents were included in materials he sent to Mr. Schoenwetter only as a result of an "inadvertent oversight."  Perhaps Mr. Beck accidentally attached a file containing Johnson's HDR personnel file to an email in response

10

to Mr. Schoenwetter's request for information that might help Defendants in the State Court Litigation. Or Mr. Beck may have failed to notice the confidentiality designation on Johnson's HDR personnel file because he simply did not look at the documents at all. Although such thoughtless behavior would not ultimately excuse the lack of respect for the Protective Order in this case, some evidence of how the "inadvertent oversight" came to pass would go a long way to supporting Defendants' claim that the initial disclosure of the documents was accidental. But because Defendants have made no effort to explain how that carelessness led to a violation of the Court's Order, the Court finds it difficult to take this excuse at face value. Without such an explanation, the Court finds it equally plausible that Defendants made the intentional choice to use the confidential documents they received in this case because they thought it would help their cause in the State Court Litigation.

Next, Defendants contend that they should not be sanctioned because the confidential information was used in the State Court Litigation by attorneys who are not counsel of record in this case, and therefore, those attorneys were not familiar with this Court's Protective Order. In light of the evidence Defendants have offered in support of this claim, the Court believes this argument treads the boundaries between the frivolous and insincere. For example, Defendants offer Mr. Schoenwetter's statement in his affidavit that he "was not familiar with the terms of the Protective Order . . . at the time [he] received the documents [from Johnson's HDR personnel file]." (Feb. 5 Schoenwetter Aff. ¶ 3.) But

11

Mr. Schoenwetter does not say that he was unaware the documents were subject to a Protective Order when he reviewed them to him or when he later used them in the State Court Litigation.  Nor would such a statement be credible.  When Mr. Schoenwetter used information from the documents in the State Court Litigation, he attached a December 23, 2012 copy of the Docket from this case to his affidavit, which would have shown the entry of the Protective Order months earlier on May 4, 2012.  (Dec. 24 Schoenwetter Aff. ¶ 11 ("Attached hereto as **EXHIBIT 8** is a true and correct copy of the Docket as of December 23, 2012, in the HDR v. Aegis Case.").)  Mr. Schoenwetter also plainly had access to the publicly filed records in this case; indeed, he attached copies of certain pleadings to that same December 24, 2012 affidavit filed in the State Court Litigation.  (*Id.* ¶¶ 10, 12–13 (referencing the attachment of the Complaint, Defendants' Answer, and the Government's Notice of Election to Decline Intervention as exhibits).)  Thus, if Defendants' counsel in the State Court Litigation continued to be unfamiliar with the terms of the Protective Order, it was either because Defendants somehow failed to communicate the Protective Order's terms to them or it was because Defendants' state court counsel made a conscious choice to ignore the Protective Order's provisions.[3]

---

[3] Other evidence in the record also cuts against Defendants' argument that sanctions are not warranted because their state court counsel was unfamiliar with the Protective Order.  For example, in his December 24, 2012 affidavit, Mr. Schoenwetter acknowledged that the documents at issue here had been produced in discovery in this action and bore Bates stamps *and* a confidentiality

(Footnote Continued on Following Page)

12

Defendants next attempt to avoid being sanctioned for the violation of the Protective Order by suggesting that their counsel of record in this action did not have an opportunity to review the affidavit and memorandum before Defendants filed them in the State Court Litigation.  Again, Defendants rely on Mr. Schoenwetter's February 5, 2013 affidavit to support this contention. Mr. Schoenwetter attests that "[t]he affidavit [from the State Court Litigation] was filed with other pleadings on December 24, 2012 (Christmas Eve).  As a result, to my knowledge Mr. Heffelfinger, Mr. Wilson and Mr. Burt [who are Defendants' counsel of record in this case] did not have an opportunity to review the affidavit prior to the time that it was filed."  (Feb. 5 Schoenwetter Aff. ¶ 7.)  But this says nothing about whether *Defendants themselves*, who are bound by the terms of the Protective Order, reviewed the state court motion papers that violated the Protective Order before they were filed in Hennepin County.  Mr. Schoenwetter omits any mention of whether he showed the affidavit and memorandum to Chief Legal Officer Beck or any other representative of Defendants before he filed

---

(Footnote Continued from Previous Page)
designation.  (Dec. 24 Schoenwetter Aff. ¶ 9.)  Parties commonly place confidentiality labels on discovery documents when those documents are subject to a protective order, and attorneys who practice in civil litigation are certainly familiar with this common practice.  It would be a cynical view of the legal profession to say that an attorney has no obligation to find out what the terms of a protective order are in these circumstances.  And parties like Defendants who pursue a separate case after a protective order has been entered in a civil action in this District should at least be held accountable for letting their other attorneys know what can and cannot be done with the confidential documents they receive.  This is particularly true here, where the person sending out the confidential information is the chief legal officer of the corporation.

13

those papers. The Court can only presume that he did. And as noted above, in Mr. Schoenwetter's December 24, 2012 affidavit, and in the memorandum Defendants filed in the State Court Litigation on the same day, Defendants quoted directly from the documents at issue (Dec. 24 Schoenwetter Aff. ¶¶ 9.A.–9.C.), an act that clearly contravened the Protective Order's unambiguous terms. Defendants therefore approved the use of confidential information in violation of the Protective Order, and Defendants have provided no explanation that would suggest that this use of the confidential information was anything other than willful.

Defendants also assert that the Court should decline to issue sanctions in this matter because Relators have suffered no prejudice. They note that when the attorneys at Best & Flanagan LLP, who are counsel of record in this case, learned of Defendants' violation of the Protective Order on January 25, 2013, they worked quickly to retrieve all copies of the confidential documents and contacted Defendants' state court counsel to arrange for references to the documents to be removed from the record in the State Court Litigation. (Doc. No. 122-1 at 6–9, Aff. of Jonathan Wilson ("Wilson Aff.") ¶ 6 (discussing coordinating remedial measures with Mr. Schoenwetter); Feb. 5 Schoenwetter Aff. ¶¶ 9–10 (discussing return of all documents and redaction of state court documents).) These remedial actions were appropriate, and the record reflects that counsel in this case bear no responsibility for the violation of the Protective Order.

Nevertheless, the Court is troubled by Defendants' offer of proof that there was no harm done here. Most troubling is Mr. Schoenwetter's assertion that no harm was caused by his "general reference to the documents" in the State Court Litigation. (Feb. 5 Schoenwetter Aff. ¶ 11.) His affidavit then states that "the only information [he] referenced regarding these document (*i.e.*, date, title and Bates number) are not the type of information that would ordinarily require confidential treatment." (Feb. 5 Schoenwetter Aff. ¶ 11.) The truth is, however, that Mr. Schoenwetter and Defendants disclosed more than the date, title, and Bates number of these documents. Mr. Schoenwetter's December 24, 2012 affidavit quoted directly from at least one of the documents at issue in an attempt to improve Defendants' position in the State Court Litigation on the motion to lift the stay of discovery in that case. (Dec. 24 Schoenwetter Aff. ¶ 9.A.) Given this lack of candor about the extent of the disclosure in the State Court Litigation, it is difficult for the Court to accept the assertion that the violation of the Protective Order that occurred was unintentional.

Further, both Mr. Beck and Mr. Schoenwetter's affidavits go on to say that these violations were harmless because "the documents themselves do not contain any sensitive information that would typically be subject to a confidential designation[.]" (Beck Aff. ¶ 11; Feb. 5 Schoenwetter Aff. ¶ 11.) This rationale ignores the fact that neither Defendants' own employees nor their legal representatives are entitled to make the determination on their own that a document was improperly designated as confidential under the Protective Order.

15

The parties could have agreed to remove the confidentiality designation of these documents, but they did not. And because they did not, the decision whether a confidentiality designation is proper rests only with the Court under the Protective Order's terms.[4] (Doc. No. 78, Protective Order ¶ 11.) Just as the failure to explain how Defendants' allegedly "inadvertent" disclosure of the documents to their counsel in the State Court Litigation occurred causes the Court to question whether Defendants' actions here were willful, the attempt to argue that these documents should never have been marked confidential in the first place leads the Court to question whether Defendants decided for themselves that Johnson's personnel file did not deserve to be treated as confidential and then embarked on a plan to use that information in whatever advantageous manner they could in the State Court Litigation.

Defendants' argument that Relators have suffered no prejudice also depends on a limited and inaccurate view that the only harm at issue would result from the publication of sensitive information the confidential documents might contain. Although that type of harm may not be present in these circumstances,

---

[4] This Court and other judges in this District require a substantial showing to allow documents to be filed under seal and require parties that have designated materials confidential to demonstrate that information deserves to be protected under Fed. R. Civ. P. 26(c). But this fact does not make it appropriate for a party to unilaterally determine that documents it has received under a confidentiality designation do not deserve to be treated as confidential. Because Defendants have never asked the Court to make a determination about the propriety of Relators' designation of Johnson's personnel file as confidential, and Relators have not had an opportunity to show that the documents should be so designated, the Court offers no opinion on that issue.

the harm here is of a different, but equally important character.  Like other parties that produce information in reliance on a protective order, Relators relied on the Protective Order in this case in disclosing Johnson's HDR personnel file.  When an opponent ignores its obligations in handling information it receives under a protective order, the producing party's confidence that its sensitive information will be safeguarded erodes.  The Court's confidence that its orders will be followed erodes as well.  That erosion of confidence changes the landscape of the discovery process for the producing party and the Court's expectations that litigation can be effectively managed, and there lies the harm.

Based on the foregoing, the Court concludes that it is appropriate to sanction Defendants.  In particular, a serious sanction is warranted for Defendants' use of confidential information in the State Court Litigation on December 24, 2012.  Under Federal Rule of Civil Procedure 37(b)(2), when a party fails to obey an order to provide or permit discovery, including a protective order, the court may impose any of the sanctions available under Rule 37(b)(2)(A)(i)–(vii), and "may issue further just orders."  Fed. R. Civ. P. 37(b)(2)(A); *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 267 F.R.D. 257, 264 (D. Minn. 2007) ("Rule 37(b) of the Federal Rules of Civil Procedure provides for sanctions for the violation of discovery orders, which include protective orders under Federal Rule of Civil Procedure 26(c).").  Such a just order may include the imposition of a sanction in the form of a monetary fine to be paid to the Court. *See Pereira v. Narragansett Fishing Corp.*, 135 F.R.D. 24, 27 (D. Mass. 1991)

(noting that a finding of contempt is not necessary to impose a monetary sanction to be paid into court under Rule 37 for violation of court orders); *see also Sandoval*, 267 F.R.D. at 264 (citing *Excellus Health Plan, Inc. v. Tran*, 222 F.R.D. 72, 73 (W.D.N.Y. 2004), for the proposition that violations of protective orders are subject to the full range of sanctions available under the Federal Rules of Civil Procedure and the inherent power of the Court).

At the hearing on Relators' motion, Relators suggested that Defendants be required to pay them $10,000 as a sanction. Defendants argued that if they are subject to any sanction at all it should not go beyond an admonition. Although the Court finds that a mere admonition is an insufficient deterrent and a monetary sanction is appropriate, the Court also finds that it is not necessary that the payment of a monetary fine be made to Relators as a sanction or that the sanction needs to be as high a sum as $10,000. The Court concludes that a lesser monetary sanction will be sufficient to deter future conduct of the nature that the Court has discussed here. Based on the foregoing, the Court concludes that Defendants shall pay the following as sanctions: (1) Defendants must pay to the Court the sum of $5,000 as a monetary sanction for their violations of the Court's May 4, 2012 Protective Order; and (2) Defendants must pay Relators' reasonable expenses, including attorney's fees, incurred in making their Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(b)(2) for Violation of the Court's Protective Order (Doc. No. 117).

**JJK**