# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, ex rel. Ricia Johnson and Health Dimensions Rehabilitation, Inc., | Civil No. 08-1194 (DWF/JJK) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Golden Gate National Senior Care, L.L.C., GGNSC Holdings, L.L.C. and GGNSC Wayzata, L.L.C., all doing business as Golden LivingCenter - Hillcrest of Wayzata, and Aegis Therapies, Inc., | |
| Defendants. | |

Jonathan M. Bye, Esq., Daniel N. Sacco, Esq., and Kelly G. Laudon, Esq., Lindquist & Vennum PLLP, counsel for Plaintiffs.

Thomas B. Heffelfinger, Esq., Cynthia L. Hegarty, Esq., Joseph J. W. Phelps, Esq., and Justin P. Short, Esq., Best & Flanagan LLP; and Kevin D. Hofman, Esq., and Ryan J. Burt, Esq., Halleland Habicht PA, attorneys for Defendants.

Chad A. Blumenfield, and D. Gerald Wilhelm, Assistant United States Attorneys, United States Attorney's Office, counsel for United States of America.

# INTRODUCTION

This matter is before the Court on the following: (1) Defendants Golden Gate National Senior Care, L.L.C., GGNSC Holdings, L.L.C., GGNSC Wayzata, L.L.C., all doing business as Golden LivingCenter - Hillcrest of Wayzata (together, "Golden"), and Aegis Therapies, Inc.'s (all together, "Defendants") objections to (Doc. No. 180)

Magistrate Judge Jeffrey J. Keyes's May 1, 2014 Order and Memorandum (Doc. No. 175) relating to Relators' Motion for Leave to Amend Complaint (Doc. No. 162); and (2) Defendants' Motion to Dismiss Relators' Amended Complaint (Doc. No. 183). For the reasons set forth below, the Court overrules the objections and denies the motion.[1]

## BACKGROUND

### I.     General Background

Relators Ricia Johnson ("Johnson") and Health Dimensions Rehabilitation, Inc. ("HDR") (collectively, "Relators") initiated this *qui tam* action on behalf of the Government in May 2008. (Doc. No. 1, Compl.; *see also generally* Doc. No. 178, Am. Compl.)  Johnson was employed by Aegis Therapies, Inc. ("Aegis") as an occupational therapy assistant from October 2004 to March 2007 at Golden LivingCenter – Hillcrest of Wayzata ("Hillcrest")[2] in Wayzata, Minnesota. (Am. Compl. ¶ 8.)  Aegis provides rehabilitative services to a large number of nursing home facilities, including Hillcrest. (*Id.* ¶ 7.)  Hillcrest is what is known as a skilled nursing facility ("SNF"). (*Id.* ¶ 6.)  Johnson began working at HDR after leaving Aegis. (*Id.* ¶ 9.)

---

[1]     The parties asked the Court to refrain from deciding these two motions pending settlement discussions.  The parties then informed the Court on January 16, 2015, that they were unable to reach a settlement.  Therefore, the Court is now ruling on the pending motions.

[2]     The Golden entities are providers of health care services. (Am. Compl. ¶ 6.)  Golden Gate National Senior Care, L.L.C., GGNSC Holdings, L.L.C., and GGNSC Wayzata, L.L.C., are related but have separate corporate structures. (*See id.*)

Beginning in December 2005, and through March 2007, Johnson was specifically assigned to work in an exercise room at Hillcrest known as the "Wellness Center." (*Id.* ¶ 11.) Johnson was not a licensed physical therapist, physical therapy assistant, or physical therapy aid. (*Id.* ¶ 15.) Relators allege that Johnson was directed by her supervisors to monitor patients while they used certain exercise machines, but to not provide instruction or clinical direction. (*Id.* ¶¶ 11-12, 15.) Johnson then logged the time the patients used the machines, particularly when the patients used the Wellness Center for non-therapy purposes. (*Id.* ¶¶ 12-13.) Relators allege that no physical therapists or occupational therapists were present during this time and they did not review or supervise Johnson's work. (*Id.* ¶¶ 12, 15.) Relators allege that Johnson's time was then regularly billed as if it was performed by a licensed physical therapist or occupational therapist and for proper therapy purposes and that the time was then inappropriately submitted as claims to Medicare. (*Id.* ¶¶ 13-14.) Relators further allege that the therapists negotiated over who was able to claim Johnson's time. (*Id.* ¶¶ 13-14.) Relators also allege that Johnson often did this for a number of patients at the same time and in a group setting. (*Id.* ¶ 17.) In addition to Johnson, Relators identify a number of other individuals employed by Aegis whose services were allegedly similarly falsely claimed as physical or occupational therapy. (*Id.* ¶ 18.) Relators identify a number of examples of such false claims allegedly submitted by Defendants. (*Id.* ¶¶ 16, 20, Ex. A.)[3]

---

[3] All of the allegations included in the first three paragraphs under this Memorandum Opinion and Order's "General Background" section were also included in the original complaint. (*See generally* Compl. ¶¶ 9-21.)

In the Amended Complaint, Relators include additional allegations based on new evidence of false claims obtained in discovery. Relators did not change any of the Counts or any of the parties in their Amended Complaint. (*See* Am. Compl.) New allegations relate to the following: (1) additional representative examples of false claims and additional details regarding the false claims (Am. Compl. ¶ 20, Ex. A); (2) allegations that Defendants billed for services never provided and eight corresponding specific examples (*id*. ¶ 21); and (3) allegations relating to Defendants' failure to properly document underlying therapy services in violation of a number of laws and regulations (*id*. ¶¶ 22-28).

## II.    Procedural Background

Relators filed their action on May 1, 2008, asserting the following four claims against Defendants under the False Claims Act ("FCA") 31 U.S.C. § 3729(a): (1) False Claims; (2) Making or Using False Record or Statement; (3) Conspiring to Defraud the Government; and (4) Reverse False Claims. (Compl.; *see also* Am. Compl. ¶¶ 33-44.) The Government declined to intervene on June 27, 2011. (Doc. No. 31.) On June 28, 2011, the Court ordered the Complaint unsealed and served on Defendants. (Doc. No. 32.)

On September 9, 2011, Defendants moved to dismiss the Complaint. (Doc. No. 39.) The Court denied that motion on February 13, 2012, concluding that the Court was not divested of jurisdiction based on the so-called "public disclosure bar" and that Relators met the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure. (Doc. No. 54.)

On February 23, 2012, the Court recommended two-phased discovery. (Doc. No. 62.) Magistrate Judge Keyes then ruled on a number of discovery-related motions throughout 2012 and 2013. (*See, e.g.*, Doc. Nos. 106, 112.)

On December 19, 2013, Relators filed a motion to amend the Complaint under seal. (Doc. No. 135.) On February 21, 2014, the government again declined to intervene. (Doc. No. 158.) On February 24, 2014, the Court denied Relators' motion without prejudice. (Doc. Nos. 156, 157.) The Court then unsealed the proposed Amended Complaint, allowing service upon the Defendants. (Doc. No. 159.) On March 20, 2014, Relators filed their renewed motion to amend. (Doc. No. 162.) On May 1, 2014, Magistrate Judge Keyes granted in part and denied in part the renewed motion to amend. (Doc. No. 175.) On May 8, 2014, Relators filed their Amended Complaint. (Doc. No. 178.)

The pending objections and motion both relate to the Amended Complaint. (*See* Doc. Nos. 175, 183.) First, Defendants object to Magistrate Judge Keyes's May 1, 2014 Order ("May Order") (Doc. No. 175). (Doc. No. 180.) Second, Defendants move to dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure and pursuant to Rule 9(b) requirements. (*See* Doc. Nos. 183, 185.)

## DISCUSSION

### I. Objections to Magistrate Judge's Order and Memorandum

Defendants object to Magistrate Judge Jeffrey J. Keyes's May Order (Doc. No. 175), arguing that it "fundamentally alters and broadens the claims in the original Complaint by adding claims for physical and occupational therapy outside the Wellness

5

Center." (Doc. No. 180.) Relators filed a response to Defendants' objections on June 2, 2014 (Doc. No. 189).

The Court must modify or set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D.Minn. LR 72.2(a). This is an "extremely deferential standard." *Reko v. Creative Promotions, Inc.*, 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Chakales v. Comm'r of Internal Revenue*, 79 F.3d 726, 728 (8th Cir. 1996) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

In the May Order, Magistrate Judge Keyes granted in part and denied in part the Motion for Leave to Amend Complaint. (*See generally* Doc. No. 175.) First, Magistrate Judge Keyes concluded that Relators failed to show good cause to amend to add allegations relating to speech therapy, or any therapy other than physical or occupational therapy. (*Id*. at 4-6.) Second, Magistrate Judge Keyes concluded that Relators showed good cause to amend to add allegations that: (1) Defendants submitted false claims for therapy services that were not provided at all; and (2) that Defendants failed to properly document the underlying therapy services for certain services provided. (*Id.* at 7-11.)

Defendants object to the May Order on two main grounds. First, they argue that the May Order erroneously expands the scope of the action beyond the Wellness Center because it "ignores six years of litigation." (Doc. No. 180 at 9-10.) Second, Defendants argue that the May Order erroneously expands the scope of the action beyond the

Wellness Center because it "ignores Relators' delay" and causes "extreme prejudice to Defendants." (*Id.* at 10-11.)

Relators counter that the May Order does neither and is therefore neither clearly erroneous nor contrary to law. According to Relators, Magistrate Judge Keyes carefully considered the substantial record and procedural history in front of him and was very aware of both, having been involved in discovery disputes with both parties over the years. Relators further assert that Magistrate Judge Keyes did in fact carefully consider and reject Defendants' diligence argument, as well as Defendants' prejudice argument. The Court agrees.

Magistrate Judge Keyes took into account the detailed history of this litigation when making his determination, which is clearly reflected in the May Order. Magistrate Judge Keyes further took into account the timing and nature of the parties' multi-phase, "long, rolling discovery production" when examining diligence and prejudice. (Doc. No. 175 at 9.) In fact, Magistrate Judge Keyes rejected certain amendments to the Complaint for failing to meet diligence requirements. Magistrate Judge Keyes also properly narrowed Relators' amendment requests and did so in a way that tied additional allegations to "the same patients, the same facilities, and the same counts implicated by [the] original Complaint" thereby addressing any prejudice. (*Id.* at 7.) Thus, the Court finds that Magistrate Judge Keyes's Order and Memorandum is neither clearly erroneous

nor contrary to law. The Court overrules Defendants' objections and affirms Magistrate Judge Keyes's Order and Memorandum in all respects.[4]

## II. Motion to Dismiss

Defendants move to dismiss the Amended Complaint under Rule 12(b)(6) because it "expands the action" and therefore fails to state claims for which relief may be granted, particularly in light of Rule 9(b) requirements. (*See* Doc. Nos. 183, 185.)

### A. Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

---

[4] The Court notes that although the bulk of the allegations in the original complaint relate to the Wellness Center, not all allegations are so limited. (*See, e.g.*, Compl. ¶¶ 23-24.) More importantly, Relators have represented to the Court that they will seek no further discovery based on the additional allegations in the Amended Complaint. Therefore, at this stage in the proceedings, the Court declines to categorically prohibit allegations and evidence that reaches beyond the Wellness Center to the extent that such allegations and evidence relate to the Amended Complaint and are based on already-conducted discovery.

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

### B. Additional Claims

#### i. "No Therapy" Allegations

Defendants argue that the newly added so-called "no therapy allegations" are insufficient to support a FCA claim because they fail to show that the lack of therapy would have changed the *per diem* rate Defendants received from Medicare. The "no therapy allegations" include the following:

> In addition to billing Medicare for unskilled, unsupervised activities of therapy assistants, Defendants billed Medicare, or caused Medicare to be billed, for therapy services when no services were provided. In at least forty-five instances where therapists wrote notes documenting that no treatment was provided on the date of the note, Defendants nonetheless billed Medicare, or caused Medicare to be billed, for reimbursable therapy services they purportedly provided on that date.

(Am. Compl. ¶ 21.) Relators also include a list of eight specific examples of such billing for therapy services that were allegedly not provided. (*Id.*) Defendants contend that

9

these allegations fail to support Relators' claims because Relators cannot show that the claims caused financial loss to the government (i.e. that Defendants received additional funds from Medicare). In support of their argument, Defendants detail the Medicare payment process for SNFs, including Hillcrest. (Doc. No. 185 at 11-14; *see* Doc. No. 186 ("Heffelfinger Aff.") ¶ 4, Ex. B; *see also* Doc. No. 187 ("Lambowitz Decl.").) Defendants argue that SNFs are reimbursed through *per diem* payments, which are in the form of a predetermined daily sum for each patient. (Doc. No. 185 at 11-12.) The predetermined sum is based on an assigned categorization, which is determined based on the needs and required services for each patient. (*Id.*) Thus, according to Defendants, the particular minutes of therapy provided on a particular day do not correlate to the billing for therapy provided and, instead, Defendants are reimbursed under the categorization system. (*Id.* at 13.) Defendants go as far as to state that "it is irrelevant how much therapy is actually provided once a patient's overall per diem rate . . . has been established." (*Id.*) According to Defendants, the structure of this system shows that Plaintiffs have failed to establish a connection between the billing and any alleged loss to the Government. The Court disagrees.

To establish a prima facie case under the False Claims Act, a plaintiff must prove: (1) the defendant presented or caused to be presented to a federal official a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent. *See United States ex rel. Vigil v. Nelnet, Inc.*, 639 F.3d 791, 795-96 (8th Cir. 2011); *see also Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 182 (3d Cir. 2001) (citing *Young-Montenay, Inc. v. United States*, 15 F.3d 1040, 1043 (Fed. Cir.

1994) (quoting *Miller v. United States*, 550 F.2d 17, 23 (1977))). The falsity or fraud must be material to the payment decision-making process." *Vigil,* 639 F.3d at 796.

First and foremost, the Court declines to consider Defendants' additional information detailing the payment process for SNFs at this time, and therefore declines to convert the motion to one for summary judgment, on the grounds that the information is outside of the pleadings and is inappropriate for consideration on a Rule 12(b)(6) motion to dismiss. *See* Fed. R. Civ. P. 12(d); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *see also Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999).

Second, the Court concludes that Relators' new allegations, particularly in addition to the original allegations, clear the hurdle of presenting "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 545. Relators present allegations that support each element of a claim under the FCA. Relators allege that claims were submitted to Medicare or Medicaid. Relators also allege that the claims were "false or fraudulent" and point to specific examples. In fact, Relators provide specific examples linking the failure to provide services to the claims submitted, including specific billing codes, dates, and persons involved. Moreover, the additional allegations meet the "falsity or fraud" materiality requirement because there is little doubt that the billing of services that were never provided may "have the potential to affect the payment decision-making process." *United States ex rel. Portilla v. Riverview Post Acute Care Ctr.*, Civ. No. 12-1842, 2014 WL 1293882, at *8 (D.N.J. Mar. 31, 2014). Thus, these allegations meet the requirements for stating a claim in the Eighth Circuit.

11

*See Vigil*, 639 F.3d at 795-96, 799; *see also United States ex rel. Thayer v. Planned Parenthood of the Heartland*, 765 F.3d 914, 916 (8th Cir. 2014).

Third, even if the Court were to consider the SNF payment process, Relators would still be able to sufficiently state a claim at this stage in the proceedings. Defendants themselves assert: "As stated, a patient's need for therapy is one element that is taken into account in determining . . . categories and, ultimately, *per diem* payments." (Doc. No. 185 at 12.) This makes clear that therapy is considered in determining payments. Thus, based on the examples provided, which detail specific patients' needs for therapy, presumably such therapy would be a part of the patients' categorization determinations and ultimately part of the *per diem* payments received. Further, the details regarding whether a specific claim was fraudulent or caused the government to actually lose money are questions for trial or are better addressed at the summary judgment stage. At this stage, Plaintiffs have done what they are required to do—they have alleged specific facts sufficient to support a claim that the government was billed for services that were never provided. More importantly, the "no-therapy allegations" are only one set of allegations, and Relators Complaint already includes sufficient facts to meet the prima facie elements of Relators' claims without these additional allegations.

        ii.      **"No Documentation" Allegations**

Defendants argue that the "no documentation" allegations fail to support a FCA claim. The "no documentation" allegations, relate to Relators' claims that Defendants failed to properly document underlying therapy services, including, for example, failure to document the supervision of therapy services provided by physical and occupational

therapy assistants such as Johnson. (*See* Am. Compl. ¶¶ 22-29.) Further, Relators specifically include allegations about the following laws and regulations in support of their no documentation allegations: (1) 42 C.F.R. § 483.75(b), relating to operation in compliance with certain laws and accepted standards (*id*. ¶ 22); (2) 42 U.S.C. § 1395i(3)(d)(4)(A), relating to standards associated with SNFs (*id*. ¶ 23); (3) Medicare regulations such as 42 C.F.R. § 483.75(1)(l), relating to clinical records (*id*. ¶ 29); and (4) various Minnesota laws relating to "provid[ing] on-site observation of the treatment and documentation of its appropriateness" (*id*. ¶ 24; *see also* ¶ 27), including Minn. Stat. § 148.6432, subd. 3(b), governing therapy assistant supervision (*id.* ¶ 25) and Minn. Stat. § 148.6432 subd. 3(d), relating to occupation therapy documentation requirements (*id*. ¶ 26). Relators also allege that:

> Most of the therapy services provided to Hillcrest patients and billed to Medicare were provided by physical therapy assistants and occupational therapy assistants. On information and belief, the services provided by other therapy assistants, like the services Johnson provided, were not supervised by physical or occupational therapists. The documents produced by Defendants as of October 31, 2013, demonstrate that Defendants billed Medicare or caused Medicare to be billed for thousands of services provided by physical and occupational therapy assistants with no documentation that those services were supervised by a therapist. These claims were false due to a lack of required supervision of therapy assistants and the lack of documentation of that supervision.

(Am Compl. ¶ 28.) Relators again include a number of "Representative samples of claims for services billed to Medicare for services provided by unsupervised physical and occupational therapy assistants . . . ." (*Id*.)

Defendants assert that Relators' allegations relating to Defendants providing inadequate documentation to the Government cannot support claims under the FCA

13

because failure to provide appropriate documentation relates only to the conditions of participation in the government programs and does not relate to whether the government makes payments on claims. According to Defendants, Relators must show that any regulatory compliance was a condition of payment because conditions of participation are subject to another complex administrative enforcement framework and should not be addressed here. Defendants further assert that all of the laws and regulations relating to "supervision" and "documentation" are conditions of participation and therefore fail to state claims.

Relators counter that these allegations merely provide further support for their false claims allegations. Relators further counter that, in fact, these allegations can support FCA claims because it cannot be said as a matter of law that knowing about such violations would not have changed the Government's decision to pay for the submitted claims. The Court agrees with Relators.

The mere failure to meet certain requirements of participating in Medicare or Medicaid, such as documentation requirements, cannot support claims for violations of the FCA. "The FCA is not concerned with regulatory noncompliance. Rather, it serves a more specific function, protecting the federal fisc by imposing severe penalties on those whose false or fraudulent claims cause the government to pay money." *U.S. ex rel. Dunn v. N. Mem'l Health Care*, 739 F.3d 417, 419 (8th Cir. 2014) (citing *Vigil*, 639 F.3d at 795-96 and 31 U.S.C. § 3729(a)(1)(A)-(B)). As a result, "[t]he FCA generally 'attaches liability, not to the underlying fraudulent activity, but to the claim for payment.'" *Id.* (citing *In re Baycol Prods. Litig.,* 732 F.3d 869, 875 (8th Cir. 2013)).

14

However,

> [t]he scope of regulatory requirements and sanctions may affect the fact-intensive issue of whether a specific type of regulatory non-compliance resulted in a materially false claim for a specific government payment. The issue is often complex and may require inquiry into whether a regulatory requirement was a precondition to the government payment or merely a condition of continuing participation in a government program.

*United States ex rel. Onnen v. Sioux Falls Indep. Sch. Dist. No. 49-5*, 688 F.3d 410, 414-15 (8th Cir. 2012) (citations omitted).

Here, Relators allegations regarding regulatory requirements, legal requirements, and documentation failures do not undermine the fact that Relators have adequately stated claims under the FCA. In the original complaint, Relators provided detailed factual allegations relating to Defendants' false claims for therapy services. (*See, e.g.*, Compl. ¶¶ 18, 21.) As Relators and Magistrate Judge Keyes note, paragraphs 22 through 30 of the Amended Complaint provide *additional* factual support for Relators' claims for fraud. The Court has already determined that the allegations in the original complaint were sufficient to establish the elements of FCA claims, even in accordance with the heightened requirements of Rule 9(b). The complaint includes, and included prior to amendment, specific patients, specific incidents, and specific billings. Simply stated, these are not new claims and Relators previously stated, and continue to state, sufficient facts to support their claims.

Moreover, the "new" allegations fall squarely under the category of evidence that "may require inquiry into whether a regulatory requirement was a precondition to the government payment or merely a condition of continuing participation in a government

15

program." *See Onnen*, 688 F.3d at 414-15. Any analysis of the extent to which the "no documentation" allegations actually caused payment of claims is not appropriate at the motion to dismiss stage. Plaintiffs have presented sufficient allegations to overcome a motion to dismiss and that is enough. This is even true of allegations relating to violations of specific state and federal laws, which amount to additional allegations supporting Relators' claims that the government may have paid for claims for which it would otherwise not have paid. Defendants' motion to dismiss on these grounds is denied.

### iii. Exhibit A Allegations

Defendants assert that Relators fail to plead their additional allegations with the requisite particularity under Rule 9(b). Defendants appear to primarily focus their argument here on Exhibit A which relates to the following:

> For the time period beginning December 1, 2005 and ending March 31, 2007, Defendants submitted hundreds of claims for payment to Medicare that were false claims because the claims included charges for therapy services that were not reimbursable by Medicare. Those claims were not reimbursable because they were not skilled services, the services were provided by unsupervised therapy assistants or by personnel who were not qualified to provide physical therapy services, there was no documentation of the services, and, in some instances, because the services were not provided at all. The total amount of those claims exceeds $5,000,000.00. *A list of such false claims is attached hereto as Exhibit A*.

(Am. Comp. ¶ 30 (emphasis added); *see also id.* ¶ 20.) Defendants also appear to object to paragraphs 21 and 28 as insufficiently pled under Rule 9(b). Exhibit A contains what Relators state are hundreds of examples of false claims; paragraph 21 is detailed above (Section B.i. at 9); and paragraph 28 is also detailed above (Section B.ii. at 13).

16

"Because the FCA is an anti-fraud statute, complaints alleging violations of the FCA must comply with Rule 9(b)." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006).  Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  The rule requires a plaintiff to plead "such matters as the time, place and contents of false representations, as well as the identity of the person making the representation and what was obtained or given up thereby." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (internal quotation omitted).  Otherwise stated, the party must identify the "who, what, where, when and how" of the alleged fraud; conclusory allegations of fraudulent conduct will not suffice.  *Id.*

Applying these standards, the Court again finds that Relators' complaint pleads fraud with sufficient particularity to satisfy the requirements of Rule 9(b) and survive the present motion to dismiss.  The Court previously found that the original complaint satisfied the requirements of Rule 9(b) in this case, and therefore, the inclusion of *additional* allegations and examples cannot detract from the fact that Relators have already met their burden.  Although a Magistrate Judge faces a different standard on a motion to amend the complaint, it is worth noting that Magistrate Judge Keyes also viewed these allegations as additional—not as new claims.  (Doc. No. 175 at 10 ("And, since the additional allegations . . . relate so closely to those already pleaded in the original Complaint and appear to merely add detail about the nature of the violations already pleaded . . ., the Court concludes that, although perhaps unnecessary, it will allow Relators to amend to add them into the operative pleading.")).  Relators also state that the

17

additions are merely supplementary examples and that they are neither expanding their claims nor seeking any additional discovery.

To the extent that Defendants argue that the new allegations are insufficient to support claims because they are not based on firsthand knowledge of or involvement with new patients or claims, the Court also disagrees. The information stems from Johnson's knowledge and experiences and was derived through discovery—it is not based on generalized allegations that require additional discovery.

Further, to the extent that Defendants feel that Exhibit A is unintelligible, it is not relevant because the allegations in the body of the complaint adequately support Relators' claims. *See Joshi*, 441 F.3d at 557 ("Clearly, neither this court nor Rule 9(b) requires [the Relator] to allege specific details of *every* alleged fraudulent claim forming the basis of [his] complaint . . . [Instead, Relator] must provide *some* representative examples of their alleged fraudulent conduct, specifying the time, place, and content of their acts and the identity of the actors.") (emphasis in original). Here, for example, paragraph 16 includes examples listing the date, patients, and amount of time Relators allege to be fraudulent and is in addition to other paragraphs detailing the alleged actors, place, actions, and fraudulent submissions. (*See* Am. Compl. ¶¶ 10-16, 20-21.) Simply put, Relators have identified the "who, what, where, when and how" of the alleged fraud and have provided more than adequate notice to Defendants of the claims to defend. *See Joshi*, 441 F.3d at 556. Therefore, Plaintiffs' allegations meet the requirements of Rule 9(b) and the Court denies Defendants' motion to dismiss on these grounds.

## C. Public Disclosure Bar and Subject Matter Jurisdiction

Defendants assert that, only with respect to the new allegations, the public disclosure bar prohibits Relators from pursuing their FCA claims. The Court need not restate the law applicable to this issue, as it is carefully laid out in the Court's previous Memorandum Opinion and Order denying Defendants' previous motion to dismiss, which it hereby incorporates by reference. (Doc. No. 54 at 6-8.)

The "new" allegations do not change this Court's analysis for two reasons: (1) the Court previously held that "[n]one of the public disclosures relied upon by Defendants, however, identify a fraud committed by Defendants or the specific acts and practices raised by the complaint," and the allegations here are only supplemental; therefore the Court's earlier reasoning still applies; and (2) to the extent any allegations could be deemed new, which the Court declines to do, they are still not "based upon" any "public disclosure" as they were obtained through direct discovery. In sum, the Court concludes that the public disclosure bar is not applicable here, and the Court is still not divested of jurisdiction pursuant to 31 U.S.C. § 3730(e)(4)(A).

## CONCLUSION

The allegations that Relators added to the original complaint are supplemental in nature and do not alter the sufficiency of the Relators' original allegations, which the Court previously deemed sufficient to support FCA claims. Defendants' motion to dismiss, as well as their objections attempting to reverse Magistrate Judge Keyes's determination that the additional allegations were permissible, are thus denied.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants Golden Gate National Senior Care, L.L.C., GGNSC Holdings, L.L.C., and GGNSC Wayzata, L.L.C.'s objections to (Doc. No. [180]) Magistrate Judge Jeffrey J. Keyes's May 1, 2014 Order and Memorandum are **OVERRULED**.

2. Magistrate Judge Jeffrey J. Keyes's May 1, 2014 Order and Memorandum (Doc. No. [175]) is **AFFIRMED.**

3. Defendants Golden Gate National Senior Care, L.L.C., GGNSC Holdings, L.L.C., and GGNSC Wayzata, L.L.C.'s Motion to Dismiss Plaintiffs' Amended Complaint (Doc. No. [183]) is **DENIED**.

Dated: March 10, 2015            s/Donovan W. Frank
                                 DONOVAN W. FRANK
                                 United States District Judge